We'll move to our second case this morning, United States v. Freyermuth. All right, Mr. Masiolik. Good morning, Your Honors. May it please the Court. I'm Mark Masiolik with Murphy Desmond SC, representing Appellant Cory Freyermuth. The only issue we raised in this appeal, Your Honors, is the application of minor role at Guideline Section 3B, 1.2, Sub B. With the changes to the Guideline in 2015, the essence of the District Court's decision to apply or not apply a minor role is to compare the individual defendant's role to the roles of the average members of the criminal activity, in this case a drug conspiracy. Anybody could do what Cory Freyermuth did. He did what he was told. The average members of the conspiracy, by contrast, and nobody disputes that the average members of the conspiracy were regional methamphetamine dealers in Wisconsin who were regularly distributing pound levels of methamphetamine. Mr. Masiolik, are you arguing that he had more than one job here? He was involved in multiple significant parts of the conspiracy. Now, it's true, of course, that he seems to have been operating as his brother's lieutenant, but he seems to have shouldered a significant amount of responsibility. He stored the meth. He maintained the inventory. He delivered the meth to dealers. He collected, laundered the sales proceeds. There's no question that he wasn't, you know, the leader, but he wasn't simply the low level. I don't like that word mule, but I'll use it. I agree, Your Honor. He was not, you know, the typical drug mule, someone who may be recruited just to make one trip at high risk, low reward, someone that DTO finds to be, you know, disposable. On the other hand, the comparison is between the average members of the conspiracy, which were pound level drug dealers who had their own networks, their own customers, had discretion, had, you know, really had the skies a limit they could build their own business. Corey did what he was told. And while he did— Why is that—excuse me. Why is that so dispositive? The judge, Chief Judge Peterson, notes, again, this multifaceted role. He's a jack of all trades. He's doing all different kinds of things. Now, granted, that's different in type from being a specialist about distribution or a specialist about transportation or other things. But it's the very versatility that I think bothers the judge. And he's inevitably comparing apples and oranges, right? You know, but he's saying this guy is so helpful to the conspiracy, I guess I'll say. He's playing a particular role that does not make him comparatively less important than anyone else, even though the roles are different. Ciarán, I think that the distinction is essentially that, you know, as I was thinking about it yesterday, I came up with the comparison or the metaphor of a server working at a restaurant. That person is involved in almost every aspect of operating a restaurant, serving food, food safety considerations, security of the establishment, accounting, reporting for tips, getting, you know, collecting money. But you wouldn't say that, you know, and that sort of person is integral to the operation, which I think is really what Judge Peterson found is that, you know, he's important. But he's also someone who's easily replaceable. And the amendment to the guidelines in the commentary tell us that, you know, all the decisions that, you know, come out of this court and several of the government cites, it really doesn't cite any decisions that actually interpret the rule as written now. It's all before then that it relies on. Tell us that just because somebody's integral or, you know, the conspiracy wouldn't have been the same without them, that doesn't disqualify them from having a minor role reduction. But it is comparative, and I hate to say it. It's actually quite regrettable. But, I mean, all of these distributors turn out to be pretty replaceable, too. You know, you see one goes to prison, somebody else pops up, and it's, there's a scope that I think the judge, and our review is deferential. That's another point I'm trying to keep in mind. So, to be able to say that he is, that anybody who looks at this would have to realize that he is less important to this conspiracy than the average member, that's a stretch. And I quibble again a little bit, Your Honor, with the, you know, the less important or less integral is, again, sort of the old way of pre, you know, preamendment of looking at these things. And really it's the comparison between the average members of this conspiracy and this particular defendant. And the district court, in its findings, recognized Corey really had no discretion. He did what he was told. He handled, you know, I mean, there's large quantities of methamphetamine here, but that's because of, you know, nothing to do with Corey. If this had been a conspiracy involving, you know, distribution of five grams of methamphetamine at a time, Corey's, you know, his skills or whatever he brings to it don't change at all. There's nothing about what he does, you know, it's just, it's just bigger amounts. Why does taking instructions mean that you have a minor role? It seems to me that those are two different considerations. We're not talking about leader, organizer, manager, supervisor there. I certainly would see the importance of how much discretion you have, but minor roles at the other end. I think it is because, you know, it's not, I wouldn't argue that just because somebody is given some instructions that means they always have a minor role. But in this case, all Corey did was follow directions. He didn't do anything independently. He didn't even talk to the regional distributors. It was, you know, the chain of communication was they spoke directly with Levi Bagny. They made decisions about, you know, what to distribute, who to distribute it to, how much it was going to be, whether Levi was going to, Levi Bagny was going to provide money to help the regional distributors with court cases that cropped up. And Corey wasn't part of any of that. So it's not that the fact that he received instructions, it's that all he did was follow instructions. And, you know, I agree, Your Honor, that, you know, taking people off the street through drug prosecutions has been ineffective in reducing the number of drug dealers. But nevertheless, these people, you know, Pelkey, White, the other regional distributors have risen to a level that they have, you know, they have skills and they have developed these networks and they have, you know, almost, you know, it's unfortunate really because they have the same sort of skill set as small business people, deciding who to trust, who not to trust, how to manage money. Corey did none of that. All he did was take things where Levi told him to take them, pick things up when Levi told him to pick them up, and send the money back in a fashion that, you know, that Levi told him to do. So it's true, that's money laundering. And that makes it sound like, you know, something much bigger than it is. Just like if we say, oh, this person's a drug trafficker, that sort of sounds like, oh, they're driving a big fancy car, they're moving lots of weight. But drug trafficking also means someone who's drug dependent gets money pooled and distributes a little bit to survive. So just those categories I think are not really helpful. So I see I'm into my rebuttal time, so I'll answer any questions that might come up right now. I do have a question about harmless error. I don't see how this affected Judge Peterson's sentence at all, the denial of your minor role adjustment. The sentence here was far below even the lower guidelines range that would have, that the minor role adjustment would have produced. I agree it was. I guess, and there are certainly judges like Judge Edelman in the Eastern District who will explicitly say, I carefully considered this guideline issue, I'm overruling it. But even if I had gone the other way, it wouldn't have affected me for these reasons. I don't think Judge Peterson gets into that explicitly at all. And he, I think more than anything, recognizes that Corey's role in the conspiracy is a mitigating factor, which I have trouble squaring with his denying the minor role adjustment, if that is, in fact, one of the factors he relied on. The way to square it is to conclude that the guidelines range had no influence whatsoever on his decision, which is pretty clear from this transcript. And that may very well be the court's impression. I would just stand on the court's precedent where there are numerous decisions that say without an explicit disclaimer that the court's not relying on the guidelines or that the objection wouldn't have mattered, that this court's been hesitant to find harmless error. Fair enough. All right. Mr. Wigner. Yes. Good morning. I may please the court. Aaron Wigner representing the United States. The government is asking the court to affirm the judgment and conviction order of the district court here. The district court's decision to deny the minor role reduction was not clearly erroneous. It's noteworthy that this court has previously stated it will rarely reverse a district court's denial of a defendant's request for a minor role reduction. To succeed in obtaining a minor role reduction, the defendant was required to show that he was substantially less culpable than the average participant in the conspiracy. Forgive me. Do you think it matters whether Mr. I don't think that it does matter. I think if he followed those directions explicitly with no discretion, I think this court should still look at the totality of the circumstances regarding all the different tasks that he played and how important those tasks were. But I would note here, and Judge Peterson noted the same, that Corey Framuth was in Wisconsin. Levi Bagney was in Arizona. So this was not a case where somebody was sitting right next to him telling him what to do. He did have some discretion. He did have some independence. He wasn't directly supervised, hardly ever, in the tasks that he was carrying out. So I think that is a factor that this court should consider, and Judge Peterson should consider too, in deciding whether a minor role was appropriate. So the district court here did have an ample factual record to find that the defendant failed to show that he was substantially less culpable than the average participant. The district court recently concluded that this defendant was a full participant and that he played a multifaceted role. As this court has already noted, he was responsible for the transportation and storage of methamphetamine, the delivery of methamphetamine. He also collected money, and then he laundered that money through multiple bank accounts back to Bagney in Arizona. Even if the district court— Mr. Bagney seemed to think Mr. Fairmuth didn't do his job very well, wasn't terribly good at it, or bright, or whatever. We seem to be complaining about him quite a bit. I think that's something the court could consider, but even with that said, the defendant here had all of these roles for a long period of time. This is a conspiracy that went on for over a year and a half. And so all of these roles that we're talking about, he did over and over and over again. So if Mr. Bagney was really that unsatisfied with the defendant's work in this organization, he could have tried to replace him. Now, there was an issue brought up earlier about replaceability and whether that is something the court should consider here. I think the analogy that was made with a server in a restaurant is not a particularly good one. Here you have the defendant who is Bagney's half-brother, and he trusts him. And I think that was a huge part of what Judge Peterson decided in looking at the totality of circumstances with the level of trust that Bagney had in the defendant. This was his half-brother, and there was nobody else in a similar position in Wisconsin who could effectively run the organization in Wisconsin while getting directions from Arizona. This was the only defendant who was in that situation. And so that level of trust, I think, is a huge factor for this court to consider in deciding whether or not a mitigating role was appropriate. How important, if at all, is the fact that Mr. Framuth seems to be kind of at the mid-level of the conspiracy? He's not the supplier. He's not out there in the street distributing things. He's in some middle management coordinating role. Are we supposed to think about this minor role adjustment in those kinds of hierarchical terms, or is it just each case is its own picture? I really think each case has to be its own picture. I don't know if I necessarily agree that he was middle management here. There was really nobody else who had a similar role to what he had. And it goes back to, I guess, my original point that he was unique in that aspect. And what is required in a drug trafficking organization to succeed properly is quite a bit. And I think this case shows all the different things that need to be done. So, for example, here the defendant was receiving packages containing multiple pounds of methamphetamine in the mail. He was then going to a storage unit, and he was storing the meth. He was a leaseholder on that storage unit. When Mr. Bagney would call him to make a delivery, he would have to go to the storage unit. He'd have to pick it up. He'd go deliver it to the customer and at the same time take the proceeds, sometimes over $20,000 at a time. And then he'd go to the bank, and he'd do what Levi Bagney's told him to do several times, which was make cashier checks to certain people, deposit it into certain accounts. So it really was this multifaceted role that I think put him in a very unique situation. And I don't think it's necessarily true that he was a middle manager. I think it was something beyond that that his role was in this organization. And once again, it's just that really high level of trust that Bagney has in him I think sets him apart from certainly a minor role player, but I think also an average participant even in this particular conspiracy. I also wanted to mention that I think this case is very similar to the Gallardo case and the Gonzalez cases that I cited in the government's brief. In both of those cases, this court found that the district court did not clearly err in denying the minor role reduction. I think it's also noteworthy that there was no attempt to distinguish those cases in the appellant's reply brief. In summary, I think the defendant viewed his role in this offense one particular way, and the district court and the government saw his role much differently. And that conclusion was not legal error by the district court. So unless the court has further questions, I would end by asking you to affirm the judgment and conviction of the district court in this case. Would you address the harmless error point? Yes. I agree with you, Judge Sykes, that I think he would have reached the exact same sentence regardless of this guideline issue. And Judge Peterson basically said as much in the transcript when he said he was taking a holistic view of the sentence and applying 3553A factors in addition to the guidelines. We don't have the kind of explicit statement on this record by the judge saying, even if I was wrong on the guidelines calculation, this would be my sentence, which is sort of a safe harbor, for lack of a better way to put it, a harmless error analysis. I think Judge Peterson got right to the edge of that and sort of stopped without explicitly saying it. I think it's certainly clear, as you noted from the transcript, that that was what his thinking was, but he did not explicitly say that. What's the law on that point? That's certainly sufficient for harmless error if a judge says explicitly that this would be my sentence, even if I'm wrong on the guidelines range. Is it necessary? I don't believe it's ever been said that it's necessary. I think this court could certainly view this as a harmless error type case. Is that sound as a legal rule? I mean, if we said that in this case, that would be making some law, right? I think that is correct. The government is completely comfortable moving forward here with clear error and that standard, which is obviously very deferential to the district court as well. Can you address the question? Is that sound as a legal rule, that an explicit statement is sufficient, but it's not necessary? Is that a sound legal rule for harmless error analysis? I don't know if it is, Your Honor. Well, you have to also consider, would such a rule be consistent with the Supreme Court's insistence that we have to start in anchor cases in the guidelines? Right. No, that makes total sense. And like I said, I think he could have said it explicitly. He didn't. I know in the end we talked about the fact that this court could view it as a harmless error case, but at this point, I mean, the government is completely comfortable just saying this should be viewed under clear error and leaving it at that. Okay. Thank you. Thank you. Mr. Maciolak. Thank you, Your Honors. I have barely a few moments, but I did want to address really quickly. We covered a lot of ground. You can have some extra time. Okay. Well, thank you. The idea that Bagney trusted Corey, of course he did. He let him have lots of methamphetamine that he would take out to places at Bagney's direction, bring back money that he could have gotten away with or whatever, right? And I also agree that Bagney's not physically present, hovering over him, but he's definitely supervising him, everything he's doing. Take two pounds to this guy, one half pound in each hand. That's how much you need. Take this much to this bank, this much to another bank. Wake up, brother. It's time to go to the bank to basically further the money laundry. He is very carefully supervised. He's not out there doing anything on his own. Fundamentally, usually the robust review of sentences we have in federal court compared to state court is really a fundamental difference between the two systems. And this guideline kind of strikes me as being much more nebulous and malleable than almost any of the other ones that I can think of, where if it really comes down to just, well, the totality of the circumstances and however the district court wants to weigh this is fine, I guess then that's the rule. But normally that's not the rule, and we're able to essentially solve the guidelines as a problem, right? There's usually an answer, not like, for example, Wisconsin's foray into guidelines where they basically published a list of factors. It's like, it could be mitigating. It could be aggravating. It's up to you, right, which did nothing for advancing various purposes of sentencing. We'll list those off. Counsel knows he's arguing in front of one judge who's from Wisconsin. Just for the students in the audience. I know there's some students in the audience who helped design that system that he's describing. And I'm not saying it wasn't helpful. I get the difference. It's just different, and to the extent that the guidelines should continue to be employed, as the Supreme Court has told us they must be, I think that this court establishing more standards to aid the practitioners and the district courts in applying the minor role and even the mitigated or the minimal role would be very helpful. So here, the final thing I have to say is Judge Peterson found facts that support the minor role and then declined to apply it, and I think fundamentally that should be error even under a deferential standard. Thank you. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement. We'll move to our next speaker.